UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
IZZET AKYAR,

Plaintiff,

-against-

TD BANK, N.A., and AMANDA MAJOR, individually and in her official capacity,

Defendants.
---------------------------------------------------------------------X

**FIRST AMENDED COMPLAINT**

Civil Action No.: 18-cv-379

Plaintiff, IZZET AKYAR ("Plaintiff"), by and through his attorneys, Gerstman Schwartz & Malito, LLP, as and for his First Amended Complaint against TD BANK, N.A. ("TD Bank") and AMANDA MAJOR (also known as "Amanda Skeldon"), individually ("Major"), (collectively, "Defendants"), hereby alleges as follows:

**PRELIMINARY STATEMENT**

1. This is a civil action for damages based on Defendants' intentional acts of race and national origin discrimination in terminating Plaintiff's bank accounts with Defendant TD Bank.

2. On March 29, 2017, Defendants sent a letter to Plaintiff, stating their intent to close Plaintiff's two accounts with Defendants on April 28, 2017. Defendants gave no reason for this closure beyond declaring that "[a]fter carefully reviewing our banking relationship with you, we've determined it necessary to close your TD Bank account(s) as of April 28, 2017."

3. The accounts that Plaintiff held with Defendants have since been closed, resulting in significant emotional and economic harm to Plaintiff.

## JURISDICTION

4. This Court has original jurisdiction over all of the federal claims herein pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

## PARTIES

5. At all relevant times herein, Plaintiff was and is an individual and resident of Wind Gap, Pennsylvania, who held multiple bank accounts with Defendants.

6. At all relevant times herein, Defendant TD Bank was and is a bank headquartered in Cherry Hill, New Jersey.

7. At all relevant times herein, Defendant Major was and is the Assistant Vice President for Defendant TD Bank, who in that capacity was personally responsible for the termination of Plaintiff's accounts with Defendants.

## FACTUAL BACKGROUND

8. Plaintiff is a Turkish male who held two accounts with Defendants. Plaintiff acted accordingly with all of Defendants' terms and conditions and never otherwise conducted any illegal activities in the operation of his accounts with Defendants.

9. Nonetheless, on March 29, 2017, Defendant Major, the Assistant Vice President and person entrusted with "managing risk and keeping in line with TD Bank's risk appetite," *see* Exhibit A, mailed Plaintiff a letter stating that Defendants would be closing Plaintiff's accounts on April 28, 2017. Defendants gave no reason for this termination beyond stating that the determination was made "[a]fter carefully reviewing" their banking relationship with Plaintiff. Defendants did not cite to any provisions of their banking agreement with Plaintiff nor did they cite any misconduct on Plaintiff's end.

10. Upon information and belief, the reason that Defendants failed to indicate any rules that Plaintiff had violated in their termination letter is because Plaintiff never acted in a way that would give Defendants cause to close Plaintiff's accounts.

11. Rather, on information and belief, Defendants terminated Plaintiff's accounts on the basis of Plaintiff's race and ethnicity as a Turk associated with the Gulenists.

**The Gulenists & International Strife**

12. Plaintiff is a well-known member of the Gülen Movement (sometimes also referred to the Hizmet Movement)—a cultural movement of millions of Turks who have been inspired by the teachings of Fethullah Gulen.

13. Plaintiff's name has appeared in numerous online publications in connection with his affiliation to the Gulen Movement.

14. The central pillars of the Gulenist perspective are altruism, modesty, hard work, and education. But following political fallout between the Gulenists and Turkish President Recep Tayyip Erodgan in recent years, the Gulenists have been ostracized, and even labeled as terrorists by the Turkish government.

15. This characterization—although unjustified and disputed by many, including those unrelated to the Gulenists—has had serious ramifications for Plaintiff and those similarly situated as people of Turkish descent—one example being the closing of United States bank accounts.

16. As evidenced by their online publications, since at least December 27, 2013, Defendants have been tracking this particular sector of the Turkish community—Turkish Gulenists.

17. On December 27, 2013, Defendant TD Bank published an article entitled "Turkey: What is Going on with Turkey? Recap of a Difficult Situation." In that publication, Defendant TD

Bank claims in pertinent part: "[B]oth the judiciary and the police show inner divisions, as officers respond to opposing lobbies, including that of Fethullah Gulen, a Turkish cleric living in seclusion in the US and who is believed to control hundreds of charter schools in the US and in other countries. While numerous observers consider Gulen involved in Turkey's political feud, the real problem is the political instability and uncertainty that is arising from an escalation of Turkish institutional conflict."

18. As time passed, Defendants became increasingly interested in the Gulenists. On January 16, 2014, a new publication titled "Turkey: No Easy Way Out" stated the following: "Within the AKP, and more visibly in the institutions, the fracture between Gulenists and supporters of Erdogan has become (or has always been) the real frontline of the conflict. Gulen supporters are millions in Turkey, many sitting in prominent roles, and this has become more unacceptable for Erdogan and his loyalists. The Islamist front is now divided, which even more highlights the risk of polarized institutions. If anything, a solid separation of powers, with a firmly independent judiciary, is more compelling than ever."

19. Then, two years later, another publication from Defendants surfaced following a failed coup in Turkey.

20. On July 15, 2016, a military coup attempted to overthrow the Turkish government. The Turkish government blamed the Gulenists for the coup. As noticed by Defendants in their July 18, 2016, publication, "2,745 judges and prosecutors have also been dismissed and arrested—this is more than one third of the entire judiciary headcount—for being alleged members of the so-called 'parallel state,' an illicit organization that Turkey's authorities consider to be led by Fethullah Gulen, an Islamic scholar who resides in Pennsylvania in the US."

21. Finally Defendants' July 18, 2016, report concluded that "[t]he failed coup…leaves many uncertainties and raises questions about political risks and stability in Turkey going forward. We see risks of deteriorating checks and balances and a more authoritarian regime in the country, worsening relations with the US and the EU, and ultimately risks of downgrades."

22. Just months later, Defendants closed Plaintiff's bank accounts.

23. Upon information and belief, Defendants also mailed account termination notices to their other Gulenist clients—notices dated on or about the same date as the notice sent to Plaintiff.

24. The letter notifying Plaintiff about the closing of his accounts is dated within mere days of the surfacing of online articles tying Plaintiff to the Gulenists and an FBI investigation into their monetary transactions.

25. Defendants terminated Plaintiff's accounts because he is a Turk with ethnic affiliations related to the Gulenist movement.

**Operation Choke Point**

26. On information and belief, Defendants' discriminatory act was made pursuant to a 2013 initiative of the United States Department of Justice (the "Department") titled "Operation Choke Point." The raison d'être of Operation Choke Point was simple: use all means available to deny designated "high risk" entities access to the banking industry that these businesses needed to function.

27. The stated reason for targeting certain entities was to prevent fraud of possible consumers. Upon information and belief, the Department's real intent, however, was to debilitate businesses that belonged to nationals of Turkey and other Middle Eastern countries, among other groups.

28. To incentivize banks into complying, the Department threatened them with lengthy subpoenas and civil monetary penalties. The Department did not bother itself with determining whether these businesses had actually violated any law, and in fact, it targeted merchants that it knew were acting within the confines of the law.[1]

29. Although Operation Choke Point effectively ended in 2015,[2] it was not formally terminated until August 2017[3] when members of Congress expressed concern that some banks might still be turning down customers because of Operation Choke Point.[4]

30. Remarkably, the letter Defendant Major sent to Plaintiff on March 29, 2017, was identical to a letter she sent to an anonymous payday lender in April 2016, when Operation Choke Point was still in effect. *See Expert Report of Charles W. Calomiris*, *Community Financial Services Association of America, LTD., et al. v. Federal Deposit Insurance Corporation, et al.*, No. 14-953-GK, Doc. 107-7, at pg. 225 (D. D.C.).

31. On information and belief, Defendants, with nothing but their own conjecture in hand, independently decided to close the accounts of Gulenists, including Plaintiff, under the leadership of their "CFCS" certified, "Compliance Team Lead" "Assistant Vice President" in order to avoid any future issues with the Department. *See* Exhibit A (LinkedIn Profile of Defendant Major).

---

[1] U.S. Committee on Oversight and Government Reform, The Department of Justice's "Operation Choke Point": Illegally Choking Off Legitimate Businesses?, May 29, 2014.

[2] Todd Zywicki, FDIC Retreats on Operation Choke Point?, THE WASHINGTON POST (Jan. 29, 2015), https://www.washingtonpost.com/news/volokh-conspiracy/wp/2015/01/29/fdic-retreats-on-operation-choke-point/?utm_term=.29cc7d09e12e

[3] Joseph Lawler, *Trump Ends Obama's Operation Choke Point*, THE WASHINGTON EXAMINER (Aug. 18, 2017), http://www.washingtonexaminer.com/trump-ends-obamas-operation-choke-point/article/2631944.

[4] Joseph Lawler, *Republicans Ask Trump to End Operation Choke Point Fraud Initiative*, THE WASHINGTON EXAMINER (Aug. 10, 2017), http://www.washingtonexaminer.com/republicans-ask-trump-to-end-operation-choke-point-fraud-initiative/article/2631180.

32. Defendants did so by deliberately singling out and targeting members of the Gulen movement, including Plaintiff, and terminating their bank accounts based on their Turkish-Gulenist ethnic affiliation and origins.

33. Upon information and belief, Defendants took these actions blindly, without any investigation or inquiry into Plaintiff's use of his bank accounts, and they wrongly assumed without justification that the negative mischaracterizations *some* people direct at the Gulens should be taken as proven fact and automatically attributed to Plaintiff.

34. Defendants intentionally and illegally discriminated against Plaintiff on the basis of his race, ethnicity, and national origin and in violation of Plaintiff's rights.

35. Upon information and belief, Defendants' actions against Plaintiff are part of a pattern, practice, and/or policy of purposeful, discriminatory targeting of Gulenists—a practice that, upon information and belief, has been allowed to (and will) continue if it remains unchecked in the future.

36. Defendants executed these discriminatory acts with deliberate indifference for Plaintiff's rights.

37. As a result of Defendants' discriminatory treatment of Plaintiff, Plaintiff suffered severe economic and emotional damages.

## FIRST CAUSE OF ACTION

42 U.S.C. § 1981 – Right to Make Contracts
(Against all Defendants)

38. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein.

39. Under 42 U.S.C. § 1981, all persons have the right to make and enforce contracts, and enjoy all benefits, privileges, terms, and conditions of the contractual relationship. Further,

any disparate treatment towards persons on the basis of race or ethnicity in depriving them of their rights under § 1981 is unlawful discrimination.

40. Plaintiff is a member of a racial and/or ethnic minority or was perceived as such by Defendants.

41. Plaintiff is a person within the meaning of 42 U.S.C. § 1981 and, in agreeing with Defendant TD Bank to open bank accounts, exercised his right to enter into a contract.

42. Upon information and belief, Defendants knew of the Plaintiff's ethnic Turkish background and affiliation with the Gulen Movement when they terminated Plaintiff's bank accounts.

43. Defendants intentionally terminated the Plaintiff's bank accounts because he is Turkish Gulenist.

44. By terminating Plaintiff's bank accounts with Defendant TD Bank, Defendants intentionally, and with deliberate indifference, discriminated against Plaintiff on the basis of his race and ethnicity as a Turk affiliated with the Gulen Movement without cause and in violation of his rights under 42 U.S.C. § 1981.

45. Upon information and belief, in so acting, Plaintiff was treated differently from other similarly situated non-Turkish, non-Gulenist TD Bank clients who continue to utilize their bank accounts in much the same way as Plaintiff did without having their accounts terminated.

46. As a direct result of Defendants' deliberate discriminatory acts, Plaintiff sustained severe emotional and economic damages.

## SECOND CAUSE OF ACTION

Title II of the Civil Rights Act of 1964 – National Origin Discrimination
(Against Defendant TD Bank)

47. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein.

48. Under Title II, all persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation. Further, any disparate treatment towards persons on the basis of national origin in depriving them of their rights under Title II is unlawful discrimination.

49. Plaintiff is a person within the meaning of Title II.

50. Defendant TD Bank is a public accommodation within the meaning of Title II.

51. Defendants intentionally terminated the Plaintiff's bank accounts because he is Turkish Gulenist from Turkey.

52. Defendants intentionally discriminated against Plaintiff on the basis of his national origin, as a Turkish national, in terminating his accounts with Defendant TD Bank without cause, and thereby unlawfully depriving Plaintiff of the enjoyment of Defendant TD Bank's services and accommodations.

53. As a direct result of Defendants' deliberate discriminatory acts, Plaintiff sustained severe emotional and economic damages.

## THIRD CAUSE OF ACTION

NY Exec. Law § 296(2) – National Origin Discrimination
(Against all Defendants)

54. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein.

55. Under NY Exec. Law §296(2), all persons are entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodation. Further, any disparate treatment towards persons on the basis of national origin in depriving them of their rights under NY Exec. Law § 296(2) is unlawful discrimination.

56. Plaintiff is a person within the meaning of NY Exec. Law § 292(1).

57. Defendant TD Bank is a place of public accommodation within the meaning of NY Exec. Law § 292(9).

58. Defendant TD Bank is a person and owner of a place of public accommodation under NY Exec. Law § 292(1) and § 296(2).

59. Defendant Major is a person and employee within the meaning of NY Exec. Law § 292(1) and § 296(2).

60. Defendants intentionally terminated the Plaintiff's bank accounts because he is Turkish Gulenist from Turkey.

61. Defendants intentionally discriminated against Plaintiff on the basis of his national origin, as a Turkish national, in terminating his accounts with Defendant TD Bank without cause, and thereby unlawfully depriving Plaintiff of the enjoyment of Defendant TD Bank's services and accommodations.

62. As a direct result of Defendants' deliberate discriminatory acts, Plaintiff sustained severe emotional and economic damages.

**FOURTH CAUSE OF ACTION**

New York State Constitution Art. 1, § 11—Civil Rights Clause
(Against all Defendants)

63. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein at length.

64. The New York State Constitution maintains that "[n]o person shall, because of race, color, creed or religion, be subjected to any discrimination in his or her civil rights by any…person or by any firm, or corporation, or institution…." NY Const. Art. 1, § 11.

65. While the Civil Rights Clause is not self-executing, it prohibits discrimination for civil rights "elsewhere declared by Constitution, statute, or common law." *People v. Kern*, 75 N.Y.2d 638, 651 (N.Y. 1990).

66. Plaintiff is a person and therefore covered by the New York State Constitution.

67. Defendant TD Bank is a firm, corporation, or institution covered by the New York State Constitution.

68. Defendant Major is a person covered by the New York State Constitution.

69. Defendants intentionally terminated the Plaintiff's bank accounts because he is Turkish Gulenist from Turkey.

70. By intentionally discriminating against Plaintiff on the basis of his race and national origin in violation of his above-mentioned civil rights, Defendants violated the New York State Constitution's Civil Rights Clause.

71. As a direct result of Defendants' deliberate discriminatory acts, Plaintiff sustained severe emotional and economic damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, upon all of the facts, allegations, and causes of action as set forth and alleged herein, Plaintiff respectfully requests that this Court:

A. Grant judgment against Defendants as to each and every cause of action herein alleged;

B. Grant injunctive relief that will enjoin Defendants from discriminatorily terminating Gulenists' accounts in the future;

C. Grant an order awarding Plaintiff damages in an amount to be determined at trial, including, but not limited to, compensatory and punitive damages;

D. Grant an award of reasonable attorney's fees and costs expended in connection with the prosecution of this action; and

E. Grant any such further relief as the Court deems just, proper, and equitable.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: February 13, 2018
Garden City, New York

GERSTMAN SCHWARTZ & MALITO, LLP

By: */S/ David M. Schwartz*
David M. Schwartz, Esq. (DS 9776)
1399 Franklin Avenue, Suite 200
Garden City, New York 11530
Tel. No.: (516) 880 – 8170
DSchwartz@GerstmanSchwartz.com