**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------X
IZZET AKYAR,
               Plaintiff,

v.
                                              Civil Action No. 18 Civ. 379 (VSB)

TD BANK, N.A., and
AMANDA MAJOR, individually and
in her official capacity,
               Defendants.
-------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................1

BACKGROUND .................................................................................................................1

ARGUMENT .....................................................................................................................4

I.      PLAINTIFF'S § 1981 CLAIM FAILS ...........................................................5

II.     PLAINTIFF'S TITLE II CLAIM FAILS ......................................................12

III.    PLAINTIFF'S NYSHRL CLAIM FAILS ....................................................14

IV.    PLAINTIFF'S ARTICLE 1, § 11 CLAIM FAILS .......................................15

CONCLUSION ................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aguilar v. Immigration & Customs Enforcement Division of U.S. Dep't of Homeland Security*,
  811 F. Supp. 2d 803 (S.D.N.Y. 2011)...................................................................................1, 8

*Ajuluchuku v. Wachovia Corp.*,
  2006 WL 406602 (W.D.N.C. Feb. 17, 2006), *report & recommendation adopted*,
  2006 WL 659470 (W.D.N.C. Mar. 12, 2006)........................................................................13

*Albert v. Carovano*,
  851 F.2d 561 (2d Cir. 1988).....................................................................................................5

*Anderson v. Conboy*,
  156 F.3d 167 (2d Cir. 1998).....................................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................................4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................................4

*Benaddi v. Jarvis*,
  2016 WL 3633010 (M.D. Fla. July 7, 2016) ...........................................................................9

*Bentley, Jr. v. Mobil Gas Station*,
  599 F. App'x 395 (2d Cir. 2015) .............................................................................................5

*Biswas v. City of New York*,
  973 F. Supp. 2d 504 (S.D.N.Y. 2013)....................................................................................15

*Blue Tree Hotels Investment (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
  369 F.3d 212 (2d Cir. 2004).....................................................................................................4

*Brown v. City of Oneonta*,
  221 F.3d 329 (2d Cir. 2000)..................................................................................................5, 8

*Campaign for Fiscal Equity, Inc. v. State*,
  616 N.Y.S.2d 851 (Sup. Ct.), *aff'd as modified*, 619 N.Y.S. 2d 699 (App. Div. 1994) ..........16

*Cha v. Hooters of America, LLC*,
  2013 WL 5532745 (E.D.N.Y. Sept. 30, 2013) .......................................................................12

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)......................................................................................................2

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .................................................................................................13

*Colon v. City of New York*,
    2018 WL 740992 (S.D.N.Y. Feb. 6, 2018) ...........................................................9

*Crawley v. Macy's Retail Holdings, Inc.*,
    2016 WL 6993777 (S.D.N.Y. Nov. 29, 2016) ..................................................6, 9

*Dava v. City of New York*,
    2016 WL 4532203 (S.D.N.Y. Aug. 29, 2016) .....................................................15

*DeBlasio v. Merrill Lynch & Co.*,
    2009 WL 2242605 (S.D.N.Y. July 27, 2009) .......................................................7

*Denny v. Elizabeth Arden Salons, Inc.*,
    456 F.3d 427 (4th Cir. 2006) ...............................................................................12

*Dorsey v. Stuyvesant Town Corp.*,
    87 N.E.2d 541 (N.Y. 1949) ..................................................................................16

*Dove v. Fordham University*,
    56 F. Supp. 2d 330 (S.D.N.Y. 1999) ....................................................................8

*Dozier v. Deutsche Bank Trust Co. Americas*,
    2011 WL 4058100 (S.D.N.Y. Sept. 1, 2011) .......................................................7

*H.B. v. Byram Hills Central School District*,
    648 F. App'x 122 (2d Cir. 2016) .........................................................................13

*Hatcher v. Servis First Bank*,
    2016 WL 7336403 (N.D. Ala. Dec. 19, 2016) ....................................................12

*James v. American Airlines, Inc.*,
    247 F. Supp. 3d 297 (E.D.N.Y. 2017) .....................................................12, 13, 14

*Keating v. Carey*,
    706 F.2d 377 (2d Cir. 1983) ..................................................................................6

*Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC*,
    2013 WL 417406 (S.D.N.Y. Feb. 4, 2013) ........................................................11

*Lewis v. Roosevelt Island Operating Corp.*,
    246 F. Supp. 3d 979 (S.D.N.Y. 2017) .................................................................14

*Life for Relief & Development v. Bank of America N.A.*,
    2015 WL 5729082 (E.D. Mich. Sept. 30, 2015) ..................................................7

*Lizardo v. Denny's, Inc.*,
    270 F.3d 94 (2d Cir. 2001).........................................................................5, 8, 12

*Lowe v. ViewPoint Bank*,
    972 F. Supp. 2d 947 (N.D. Tex. 2013) ..................................................................12

*Lown v. Salvation Army, Inc.*,
    393 F. Supp. 2d 223 (S.D.N.Y. 2005)..............................................................15, 16

*Mandell v. County of Suffolk*,
    316 F.3d 368 (2d Cir. 2003)..................................................................................6

*Martin v. J.C. Penney Corp.*,
    28 F. Supp. 3d 153 (E.D.N.Y. 2014) ....................................................................14

*Mekuria v. Bank of America*,
    883 F. Supp. 2d 10 (D.D.C. 2011) .........................................................................8

*Muhammad v. New York City Transit Authority*,
    450 F. Supp. 2d 198 (E.D.N.Y. 2006) ..................................................................15

*Newman v. Piggie Park Enterprises, Inc.*,
    390 U.S. 400 (1968)...........................................................................................13

*O'Neill v. Gourmet Systems of Minnesota, Inc.*,
    213 F. Supp. 2d 1012 (W.D. Wis. 2002) ..............................................................11

*Ortiz v. Metropolitan Transportation Authority*,
    2014 WL 11460929 (S.D.N.Y. Sept. 30, 2014), *aff'd*, 615 F. App'x 702 (2d Cir. 2015)...9, 14

*People v. Kern*,
    554 N.E.2d 1235 (N.Y. 1990).............................................................................16

*Raspardo v. Carlone*,
    770 F.3d 97 (2d Cir. 2014)....................................................................................5

*Robledo v. Bond No. 9*,
    965 F. Supp. 2d 470 (S.D.N.Y. 2013)..................................................................11

*Saint Francis College v. Al-Khazraji*,
    481 U.S. 604 (1987)..............................................................................................6

*Soliman v. City of New York*,
    2017 WL 1229730 (E.D.N.Y. Mar. 31, 2017)......................................................15

*Tolbert v. Smith*,
    790 F.3d 427 (2d Cir. 2015)................................................................................14

*Vinokur v. Sovereign Ban*k,
    701 F. Supp. 2d 276 (E.D.N.Y. 2010) ................................................................10, 11

*Wallace v. New York City Department of Corrrections*,
    1996 WL 586797 (E.D.N.Y. Oct. 9, 1996)...............................................................7

*Wegmann v. Young Adult Institute, Inc.*,
    2016 WL 827780 (S.D.N.Y. Mar. 2, 2016) ..........................................................6, 10

*Wheat v. Chase Bank*,
    2014 WL 457588 (S.D. Ohio Feb. 3, 2014)..............................................................11

*Wiltshire v. Dhanraj*,
    421 F. Supp. 2d 544 (E.D.N.Y. 2005) ......................................................................8

*Yusuf v. Vassar College*,
    35 F.3d 709 (2d Cir. 1994)................................................................................5, 11

**Constitutional Provisions, Statutes, Codes, and Regulations**

31 U.S.C. § 5311 *et seq.*.......................................................................................10

42 U.S.C.
    § 1981............................................................................................. *passim*
    § 1981(a)..................................................................................................5
    § 2000a.....................................................................................................4
    § 2000a(a) ...............................................................................................12
    § 2000a(b) ...............................................................................................12

New York Executive Law § 296(2) ...................................................................4, 14, 15

New York State Constitution, Article 1, § 11.................................................4, 15, 16

**Other Authorities**

Federal Financial Institutions Examination Council, Bank Secrecy Act/Anti-
    Money Laundering Examination Manual,
    https://www.ffiec.gov/bsa_aml_infobase/documents/bsa_aml_man_2014.pdf ......................10

Defendants TD Bank, N.A. and Amanda Skeldon (neé Major) respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff's First Amended Complaint ("FAC").

## INTRODUCTION

Plaintiff Izzet Akyar alleges that he is a Turkish individual associated with the Gulenist movement and that bank accounts he held with TD Bank, N.A. were closed without explanation. Based on these bare allegations, Plaintiff contends that Defendants must have discriminated against him and brings this action asserting claims under federal and state law.  Plaintiff fails, however, to plead *any* facts to show discrimination, and to the contrary alleges two alternative, *non-discriminatory* bases for the closure of his accounts: (1) Plaintiff is a member of  the Gulenist movement, a group deemed a terrorist organization by the government of Turkey and under investigation by the U.S. Federal Bureau of Investigation ("FBI") for suspicious monetary transactions; and (2) Defendants' actions were designed to comply with a directive from the U.S. Department of Justice.  Because the FAC does not contain any allegations suggesting that Defendants discriminated against him and, instead, contains allegations that contradict his claim of discrimination, the FAC should be dismissed in its entirety pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).

## BACKGROUND

In Plaintiff's account agreement, under the bolded header "**Our Right to Refuse/Close Accounts**," TD Bank, N.A. "reserve[d] the right to … terminate any Account at any time, and for any reason, or no reason …."  Ex. 1, Personal Deposit Account Agreement, at 24.[1]

---

[1]     All Exhibits cited herein are attached to the accompanying Declaration of Michelle Nicole Diamond.  The Court may consider these materials in deciding a Rule 12(b)(6) motion.  *See Aguilar v. Immigration & Customs Enf't Div. of U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 818 (S.D.N.Y. 2011) (the "Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are

Consistent with that agreement, on March 29, 2017, Defendant Skeldon, an Assistant Vice President at TD Bank, N.A., mailed Plaintiff a letter stating: "After carefully reviewing our banking relationship with you, we've determined it [is] necessary to close your TD Bank account(s) as of April 28, 2017.  For information about our right to close accounts at our discretion, please reference your TD Bank Account Agreement."  *See* Ex. 2; *see also* FAC ¶¶ 7, 9.

Notwithstanding the plain language in the account agreement, Plaintiff sued, complaining that the account closure letter he received failed to provide a reason for the closure or to "cite any misconduct on Plaintiff's end," and alleging that "Plaintiff never acted in a way that would give Defendants cause to close Plaintiff's accounts."  *Id*. ¶¶ 9, 10.  Plaintiff posits variously and inconsistently that he was discriminated against on the basis of race, ethnicity, and/or national origin because of his Turkish national origin and association with the Gulenists.  *See, e.g.*, FAC ¶¶ 1, 11, 25, 31, 32, 34, 35, 42, 52, 61, 70.  Plaintiff further posits generally "[u]pon information and belief" that he "was treated differently from other similarly situated non-Turkish, non-Gulenist TD Bank clients who continue to utilize their bank accounts."  *Id.* at ¶ 45.

In an attempt to buttress the FAC's conjecture, Plaintiff makes two additional sets of factual allegations.  First, Plaintiff alleges that he is a well-known member of the Gulenist movement, "a cultural movement of millions of Turks who have been inspired by the teachings of Fethullah Gulen."  FAC ¶ 12.  According to the FAC, there has been tension between the Gulenists and the President of Turkey, and the Turkish government has labeled the Gulenists a terrorist group.  *Id.* ¶ 14.  Plaintiff further alleges that "Defendants" have been "tracking" the

---

either in the plaintiffs' possession or the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken"); *see also Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002).

Gulenists and have published articles concerning the political instability in Turkey. *Id.* ¶¶ 16-21.

Although the FAC attributes these "articles" to "Defendants," they are actually market

commentary concerning "Rates, FX and Commodities Research," produced by analysts at a

different entity: TD Securities, London.[2]  Plaintiff alleges that Defendants notified him of his

account closure "[j]ust months" after the last such "article" referencing "risks of deteriorating

checks and balances and a more authoritarian regime in [Turkey], worsening relations with the

US and the EU, and ultimately risks of downgrades," FAC ¶¶ 21-22, and moreover "within mere

days of the surfacing of online articles tying Plaintiff to the Gulenists and an FBI investigation

into their monetary transactions," *id.* ¶ 24.   Based on this Plaintiff alleges that "Defendants

terminated Plaintiff's accounts because he is a Turk with ethnic affiliations related to the

Gulenist movement." *Id*. ¶ 25.

Second, the FAC cites a 2013 initiative by the U.S. Department of Justice (the

"Department") entitled "Operation Choke Point," which had the stated purpose to "use all means

available to deny designated 'high risk' entities access to the banking industry that these

businesses needed to function."  FAC ¶ 26.  The FAC alleges that the Department threatened

banks with "lengthy subpoenas and civil monetary penalties" to ensure compliance with the

initiative, *id.* ¶ 28, and that Defendants "independently decided to close the accounts of

Gulenists, including Plaintiff, … in order to avoid any future issues with the Department." *Id.*

¶ 31.  Without providing any basis, the FAC alleges that while the Department's "stated reason

for targeting certain entities was to prevent fraud of possible consumers, "[u]pon information and

---

[2]        *See* Ex. 3, TD Securities London, Commentary – Rates, FX and Commodities Research, *Turkey: What Is Going On With Turkey?  Recap Of A Difficult Situation* (December 27, 2013); Ex. 4, TD Securities London, Commentary – Rates, FX and Commodities Research, *Turkey: No Easy Way Out* (January 16, 2016); Ex. 5, TD Securities London, Market Musings – Rates, FX and Commodities Research, *Turkey: Short-Term Buying, Longer-Term Underperformance* (July 18, 2016).

belief, the Department's real intent, however, was to debilitate businesses that belonged to nationals of Turkey and other Middle Eastern countries, among other groups." *Id.* ¶ 27.

Based on these allegations, Plaintiff asserts claims under 42 U.S.C. § 1981, Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, New York Executive Law § 296(2) (the "New York State Human Rights Law" or "NYSHRL"), and the New York State Constitution, Article 1, § 11.

## ARGUMENT

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* On a motion to dismiss, the court accepts as true all factual allegations set forth in the complaint and draws reasonable inferences in favor of the plaintiff. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004). This principle, however, is "inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678, which along with "labels and conclusions," *Twombly*, 550 U.S. at 555, should be disregarded.

All of Plaintiff's claims fail and should be dismissed under these standards. The FAC does not come close to raising a plausible inference that TD Bank, N.A. or Ms. Skeldon discriminated against Plaintiff simply because they did not provide a reason for the account closure in the letter he received, consistent with his account agreement. Beyond that the FAC does not come close to plausibly alleging any discrimination, and instead alleges two decidedly *non-discriminatory* rationales for the account closure: Plaintiff's participation in the Gulenist movement and the Department's Operation Choke Point. Likewise, the FAC fails to raise an

inference of discriminatory treatment because Plaintiff fails to point to any similarly situated comparators.  Several of Plaintiff's claims fail for additional reasons, and the allegation that Ms. Skeldon was "personally responsible" for the closure of his accounts, FAC ¶ 7, is wholly conclusory and should be disregarded.  Indeed, the entire basis for that claim appears to be that she signed the letter notifying him of the account closure.  *See id.* ¶ 9.

## I.   PLAINTIFF'S § 1981 CLAIM FAILS

To state a claim under Section 1981, a plaintiff must allege facts plausibly showing (1) that plaintiff is a member of a racial or ethnic minority, (2) defendant's intent to discriminate based on race or ethnicity, and (3) the discrimination concerned one or more activities enumerated in the statute.  *See Brown v. City of Oneonta*, 221 F.3d 329, 338-339 (2d Cir. 2000) (affirming dismissal of § 1981 claim because plaintiff failed to sufficiently allege intentional discrimination).  The "enumerated activities include the rights 'to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property.'"  *Id*. at 339 (quoting 42 U.S.C. § 1981(a)).

To state a claim "a plaintiff must specifically allege the 'circumstances giving rise to a plausible inference of racially discriminatory intent.'"  *Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x 395, 396 (2d Cir. 2015) (quoting *Yusuf v. Vassar Coll*., 35 F.3d 709, 713 (2d Cir. 1994)).  "A plaintiff's naked allegation that the defendant acted based on the plaintiff's race and color is too conclusory to survive a motion to dismiss."  *Id.* at 396 (citing *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (*en banc*)).  A plaintiff may rely on circumstantial evidence to support an inference of discrimination where "similarly situated" individuals outside plaintiff's protected class were treated differently.  *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001); *see also Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014) (disparate treatment "is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case,"

and "requires the plaintiff to show that the employer treated ... her less favorably than a similarly situated employee outside of the protected group.").  Critically, however, "a plaintiff relying on disparate treatment evidence 'must show she was similarly situated *in all material respects* to the individuals with whom she seeks to compare herself.'" *Wegmann v. Young Adult Inst., Inc.*, 2016 WL 827780, at *10 (S.D.N.Y. Mar. 2, 2016) (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (emphasis added; alteration omitted)); *see also Crawley v. Macy's Retail Holdings, Inc.*, 2016 WL 6993777, at *7 (S.D.N.Y. Nov. 29, 2016) (comparators must be "similarly situated in all material respects").

As an initial matter, Plaintiff has not sufficiently pleaded that he is a member of a protected class.  The FAC attempts variously and inconsistently to plead race, ethnicity, and national origin discrimination based on Plaintiff's Turkish national origin and association with the Gulenists.  *See, e.g.*, FAC ¶¶ 1, 11, 25, 31, 32, 34, 35, 42, 52, 61, 70.  But Turkish national origin is not protected under Section 1981.  *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (Section 1981 prohibits intentional discrimination based on race or ethnicity—it does not apply to "discrimination based on … the place or nation of his origin"); *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) ("Section 1981 does not prohibit discrimination on the basis of gender or religion, national original, or age." (internal citations omitted)).  Nor is association with the Gulenists protected under Section 1981.  *See Keating v. Carey*, 706 F.2d 377, 384 (2d Cir. 1983) (holding that "§ 1981 however generously construed, does not prohibit discrimination on the basis of political affiliation"); FAC ¶¶ 14, 17 (characterizing Gulenists as a political group).[3]  Finally, although Plaintiff alleges that he is of Turkish national origin, he does not

---

[3]       *See also* Ex. 6, David A. Sadoff, *Turkey Formally Seeks U.S. Extradition of Muslim Cleric Fethullah Güllen*, 32 No. 8 Int'l Enforcement L. Rep. 311 (Aug. 31, 2016) (noting that the Gulenists are "believed to have millions of followers today across 150 countries.")

plausibly allege a cognizable racial or ethnic identity.  Indeed, in his original complaint Plaintiff

alleged that he is Arab (*see* Compl. ¶¶ 12, 25), but he abandons that allegation in the FAC, and—

especially given the inconsistency with his prior allegations—does not plausibly allege that he is

a member of any other racial or ethnic protected class.  *See Life for Relief & Dev. v. Bank of Am.*

*N.A.* 2015 WL 5729082, at *4 (E.D. Mich. Sept. 30, 2015) ("Although Turkey is deemed part of

the Middle East thereby resulting in Turkish people being considered Middle Eastern, Turks are

ethnically distinct from Arabs."); *Dozier v. Deutsche Bank Tr. Co. Americas*, 2011 WL 4058100,

at *2 (S.D.N.Y. Sept. 1, 2011) (dismissing plaintiff's second amended complaint because "the

court need not accept as true allegations that conflict with a plaintiff's prior allegations");

*Wallace v. New York City Dep't of Corr.*, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996) (the

court need not accept allegations as true where "plaintiff blatantly changes his statement of the

facts in order to respond to the defendants' motion to dismiss"); *DeBlasio v. Merrill Lynch &*

*Co.*, 2009 WL 2242605, at *26 (S.D.N.Y. July 27, 2009) ("[T]he Court is not obligated to accept

[inconsistent allegations] as true.").

　　　　Even assuming that Plaintiff has plausibly alleged membership in a protected class,

Plaintiff fails to plead *any* facts giving rise to an inference that any Defendant discriminated

against him on any basis, much less with the requisite intent.  Plaintiff alleges that he held two

bank accounts, that they were closed without explanation, and that he is a Turkish national

affiliated with the Gulen movement.  There is, however, no allegation to support his claim that

his bank accounts were closed *because* of his background.  The only allegation against Ms.

Skeldon is that she signed the account closure letter.  More generally, Plaintiff does not even

allege that any Defendant knew of his background let alone that they discriminated against him

because of it.  Although Plaintiff alleges that online publications identified his "affiliation to the

Gulen movement," FAC ¶ 13, Plaintiff does not allege that any of the Defendants read or were even aware of those articles (leaving aside that Gulen association is not protected anyway).  Nor does he allege that the unidentified publications identify him as having a Turkish national origin or any particular racial or ethnic identity.  *See supra* n.3.  Furthermore, the "articles" Plaintiff attributes to "Defendants" were written by analysts at TD Securities, London—a different entity from Defendants (*see supra* note 2; Exs. 3, 4, 5)—and there is no allegation that anyone involved in the decision to close Plaintiff's accounts was even aware of those articles much less relied on them.[4]

At best, Plaintiff has alleged merely that his bank accounts were closed *and* that he is Turkish and affiliated with the Gulen movement.  That fails as a matter of law.  *See, e.g.*, *Lizardo,* 270 F.3d at 104 ("Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race.  This is not sufficient."); *Brown*, 221 F.3d at 338-339 (affirming dismissal of § 1981 claim because plaintiff failed to sufficiently allege intentional discrimination); *Wiltshire v. Dhanraj*, 421 F. Supp. 2d 544, 555 (E.D.N.Y. 2005) ("In order to survive a motion to dismiss, 'the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint.'" (quoting *Dove v. Fordham Univ*., 56 F. Supp. 2d 330, 338 (S.D.N.Y. 1999))); *Mekuria v. Bank of Am*., 883 F. Supp. 2d 10, 15 (D.D.C. 2011) (dismissing plaintiff's § 1981 claim against bank that closed his bank account because "Plaintiff's case boils down to an argument that because he was mistreated and because he is black, there must be some connection between the two.  Such supposition is not enough."); *see*

---

[4]    The Court may consider the articles published by TD Securities because they are referenced in the FAC.  *See Aguilar*, 811 F. Supp. 2d at 818.

*also Ortiz v. Metro. Transp. Auth.*, 2014 WL 11460929, at *15 (S.D.N.Y. Sept. 30, 2014) (denying plaintiff's discrimination claim where plaintiff failed to show "that she suffered an adverse action *because of* her race" (emphasis in original)), *aff'd*, 615 F. App'x 702 (2d Cir. 2015).

Additionally, Plaintiff fails to raise an inference of discrimination by pleading disparate treatment. The complaint does not allege any facts to show that he was treated differently from similarly situated individuals who are not Turkish nationals associated with the Gulenists. Plaintiff's conclusory allegation that "upon information and belief … similarly-situated non-Turkish, non-Gulenist TD Bank clients [ ] continue to utilize their bank accounts in much the same way as Plaintiff did," FAC ¶ 45, is plainly insufficient to raise an inference of discrimination. *See Benaddi v. Jarvis*, 2016 WL 3633010, at *3 (M.D. Fla. July 7, 2016) (dismissing plaintiff's Title II claim because plaintiff's allegation that "other non-Arab and non-Muslim customers received services from [defendant], but were not treated in the hostile discriminatory manner experienced by her" was "not enough to sufficiently" show that similarly-situated individuals were treated differently). Not only does Plaintiff fail to point to a single similarly-situated comparator, he fails to allege that he is "similarly situated in all material respects" to these unnamed comparators. *Crawley*, 2016 WL 6993777, at *7. The FAC does not contain any allegations regarding in what ways the comparators "utilize[d] their bank accounts," for how long they held accounts with TD Bank, the political groups with which they were associated, or whether their accounts were implicated in either an FBI investigation or an initiative of the Department. Accordingly, the FAC cannot survive a motion to dismiss on the basis of a disparate treatment claim. *See, e.g.*, *Colon v. City of New York*, 2018 WL 740992, at *6 (S.D.N.Y. Feb. 6, 2018) (dismissing complaint where plaintiff offered "no information about

who these employees are, whether they were subject to the same schedules or regulations that she was, or any other indication that they are similarly situated to her"); *Wegmann*, 2016 WL 827780, at *10 (dismissing disparate treatment claims because plaintiff failed to show that she was  similarly situated to comparators where she did not plead facts about the position, responsibilities, tenure, or experience of the comparators).

      Furthermore, Plaintiff alleges two reasons for his account closure that are plainly non-discriminatory and thus contradict his discrimination claim.  First is Plaintiff's allegation that the Gulenists have been labeled a terrorist group by the Turkish government and are under investigation by the FBI for suspicious monetary transactions.  FAC ¶ 14.  Closing a bank account connected to a potential terrorist group and/or suspicious transactions is not discriminatory.  Federal law requires banks to develop compliance programs designed to monitor for and "guard[] against money laundering and terrorist financing."  Federal Financial Institutions Examination Council ("FINCEN"), Bank Secrecy Act/Anti-Money Laundering Examination Manual at 5.[5]  Federal regulators direct banks to "minimize their vulnerability to the risk associated with such activities," noting that "[s]ome banking organizations have damaged their reputations and have been required to pay civil money penalties for failing to implement adequate controls."  *Id.* at 6.  Thus, even if the relevant decisionmakers had been aware of articles linking Plaintiff to the Gulenists, the decision to close his accounts on that basis would not constitute unlawful discrimination.  *See, e.g.*, *Vinokur v. Sovereign Ban*k, 701 F. Supp. 2d 276, 289 (E.D.N.Y. 2010) (terminating plaintiff who violated bank's policy against 'structuring' transactions, in violation of the Bank Secrecy Act, was legitimate, non-

---

[5]     *See* https://www.ffiec.gov/bsa_aml_infobase/documents/bsa_aml_man_2014.pdf; *see also* 31 U.S.C. § 5311 *et seq.* (the Bank Secrecy Act).

discriminatory reason); *Wheat v. Chase Bank*, 2014 WL 457588, at *19 (S.D. Ohio Feb. 3, 2014)

(stating that "[a] company's concern about its reputation is a legitimate reason to terminate a

business relationship" in denying plaintiff's discrimination claim based on the closure of his

bank account).

Second, the FAC asserts that Defendants' decision to close Plaintiff's accounts was

"made pursuant to a 2013 initiative of the United States Department of Justice (the

'Department') titled 'Operation Choke Point,'" and specifically "in order to avoid any future

issues with the Department," which threatened severe sanctions for noncompliance.  FAC

¶¶ 26, 31.  Plainly, taking actions to comply with government directives under threat of penalty

is not discriminatory.  *See, e.g.*, *Vinokur*, 701 F. Supp. 2d at 289; *O'Neill v. Gourmet Sys. of

Minn., Inc.*, 213 F. Supp. 2d 1012, 1021 (W.D. Wis. 2002) (plaintiff failed to establish a prima

facie case of discrimination based on defendant's refusal to serve alcohol to individuals without

valid identification because failure to comply with law enforcement could have subjected

defendant to fines or license suspension).  And even if the Court accepts Plaintiff's unsupported

allegation that Operation Choke Point was motivated by discriminatory animus, he offers no

basis for imputing the *Department's* allegedly discriminatory motives to Defendants.

A complaint that identifies "other possible motives" for defendant's action and does not

contain "specific facts" suggesting discriminatory animus, "contradicts a claim of racial [or

ethnic] discrimination."  *Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC*, 2013 WL

417406, at *9 (S.D.N.Y. Feb. 4, 2013); *see also Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 475

(S.D.N.Y. 2013) (same); *Yusuf*, 35 F.3d at 714 (affirming dismissal of § 1981 claim because

plaintiff failed to provide factual support for "naked allegation" of discrimination, but did allege

11

several non-discriminatory reasons why members of college discipline panel were likely biased against the plaintiff).  Accordingly, Plaintiff's claim under Section 1981 should be dismissed.

## II.     PLAINTIFF'S TITLE II CLAIM FAILS

Plaintiff's Title II claim, like his § 1981 claim, fails for lack of allegations raising a plausible inference of discrimination based on a protected class.  *See Lizardo*, 270 F.3d at 106 ("For the same reasons that the plaintiffs cannot prevail on their § 1981 claims, they cannot do so under § 2000a."); *see also See Cha v. Hooters of Am., LLC*, 2013 WL 5532745, at *4 (E.D.N.Y. Sept. 30, 2013).  In any event, Plaintiff's Title II claim fails for two additional reasons.

First, to state a claim under Title II, a plaintiff must allege intentional discrimination depriving him of the "equal enjoyment of the goods, services, facilities, privileges, advantages, [or] accommodations of any place of public accommodation." 42 U.S.C. § 2000a(a).  Title II sets forth a list of establishments that constitute "places of public accommodation" within the meaning of the statute, including "any inn, hotel, motel, or other establishment which provides lodging to transient guests … restaurant, cafeteria, lunchroom, ... motion picture house, theater, concert hall, sports arena" and establishments located on the properties of a covered establishment.  42 U.S.C. § 2000a(b).  Banks are not listed as places of "public accommodations" under Title II.  *See* 42 U.S.C. § 2000a(b); *see also Denny v. Elizabeth Arden Salons, Inc*., 456 F.3d 427, 431 (4th Cir. 2006) (Title II "excludes from its coverage those categories of establishments not listed"); *cf. James v. Am. Airlines, Inc.*, 247 F. Supp. 3d 297, 305 (E.D.N.Y. 2017) (dismissing Title II claim because airplanes are not places of public accommodation under the statute).  And, as several courts have held, Title II cannot be interpreted to apply to banks.  *See, e.g.*, *Lowe v. ViewPoint Bank*, 972 F. Supp. 2d 947, 959 (N.D. Tex. 2013) (holding that banks are not places of public accommodation under Title II); *Hatcher v. Servis First Bank*, 2016 WL 7336403, at *3 (N.D. Ala. Dec. 19, 2016) (same); *Ajuluchuku v.*

*Wachovia Corp.,* 2006 WL 406602, at \*3 (W.D.N.C. Feb. 17, 2006), *report & recommendation adopted*, 2006 WL 659470 (W.D.N.C. Mar. 12, 2006) (same; collecting cases).[6]  Indeed, none of the establishments listed in Title II, *e.g.* hotels, restaurants, and concert halls, even resemble a bank.  For that reason alone, Akyar's Title II claim should be dismissed.

Second, a private plaintiff cannot seek money damages on a Title II claim; the only remedy available is prospective relief for the plaintiff or similarly-situated individuals.  *See Newman v. Piggie Park Enters., Inc*., 390 U.S. 400, 401 (1968); *see also James*, 247 F. Supp. 3d at 305 (same).  "To show standing for prospective relief, a plaintiff must plead and prove a 'real and immediate threat of repeated injury.'"  *James*, 247 F. Supp. 3d at 305 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *see also H.B. v. Byram Hills Cent. Sch. Dist*., 648 F. App'x 122, 125 (2d Cir. 2016) ("To obtain prospective relief, such as a declaratory judgment or an injunction, a plaintiff must show, inter alia, a sufficient likelihood that he or she will again be wronged in a similar way." (internal quotation marks and alterations omitted)).  Plaintiff does not allege facts sufficient to merit prospective relief—only conclusory allegations that Defendants' actions are part of a "pattern, practice, and/or policy of … discriminatory targeting of Gulenists that "will continue." FAC ¶ 35.  Nor could he.  The FAC alleges that Plaintiff suffered one act of discrimination (the closure of his bank accounts) under specific circumstances (because he is a "well-known member of the Gulen Movement" whose name has appeared in several online publications). FAC ¶¶ 12-13.  Plaintiff does not allege that he holds other bank accounts with TD Bank that might be closed in the future.  He also does not allege any facts suggesting that individuals with similar backgrounds are likely to have their accounts closed in the future.  To

---

[6]     Defendants are not aware of any court that has held that a bank is a place of public accommodation under Title II.

the contrary, he alleges that Defendants closed his accounts because of "Operation Choke Point," which according to the FAC, "effectively ended in 2015" and was "formally terminated" in August 2017.  FAC ¶ 29.  There is, therefore, no basis for prospective relief.  Accordingly, the FAC should be dismissed.  *See James*, 247 F. Supp. 3d at 305-306 (granting motion to dismiss where plaintiff failed to allege facts suggesting either that he would be subject to the same discrimination in the future and or that defendant had a pattern or practice of discriminating).

## III.   PLAINTIFF'S NYSHRL CLAIM FAILS

The pleading requirements for a discrimination claim under New York Executive Law § 296(2) are materially the same as those that apply to a claim under § 1981.  *See Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 988 n.3 (S.D.N.Y. 2017) (citing *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015)); *see also Martin v. J.C. Penney Corp.*, 28 F. Supp. 3d 153, 158 (E.D.N.Y. 2014) (discrimination claims pursuant to the accommodation provisions of the NYSHRL are subject to the same analysis as a claim of discrimination under section 1981). Although the NYSHRL recognizes discrimination claims based on national origin as well as race,[7] here Plaintiff's claim still fails in substance for the same reason as his § 1981 and Title II claims, namely that he fails to plead *any* facts giving rise to an inference that any Defendant discriminated against him based on his membership in a protected class—much less intentionally—and instead affirmatively alleges non-discriminatory reasons for the account closure.  *See supra* pp. 7-11; *see also Ortiz*, 2014 WL 11460929, at *15 (plaintiff's NYSHRL

---

[7]    The NYSHRL provides:

It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, including the extension of credit.

N.Y. Exec. Law § 296(2).

claim fails for the same reasons as her federal discrimination claims). Accordingly, Plaintiff's claim under § 296(2) should be dismissed.

## IV.   PLAINTIFF'S ARTICLE 1, § 11 CLAIM FAILS

As with all of his other claims, Plaintiff's claim under Article 1, § 11 of the New York State Constitution fails in substance for the same reason his Section 1981 claim fails—namely, the failure to allege that any Defendant intentionally discriminated against him because of his background and his affirmative pleading of non-discriminatory reasons for his account closure. *See Lown v. Salvation Army, Inc.*, 393 F. Supp. 2d 223, 236 (S.D.N.Y. 2005) (dismissing claims against defendants because "[t]he absence of allegations that the government defendants engaged in intentional or purposeful discrimination also proves fatal to plaintiffs' claim pursuant to the New York Constitution").

The claim also fails for other threshold reasons.  The New York State Constitution provides: "No person shall be denied the equal protection of the laws of this state or any subdivision thereof.  No person shall, because of race, color, creed or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state."  N.Y. Const. art. 1, § 11. Article 1, § 11, however, does not provide a private right of action where, as here, alternative remedies are available under state or federal law.  *See Soliman v. City of New York*, 2017 WL 1229730, at *9 (E.D.N.Y. Mar. 31, 2017); *see also Biswas v. City of New York*, 973 F. Supp. 2d 504, 522 (S.D.N.Y. 2013) (collecting cases).  Because New York Executive Law § 296 provides "at least one avenue for redressing the alleged … discrimination," Plaintiff cannot sue under Article 1, § 11.  *Muhammad v. New York City Transit Auth.*, 450 F. Supp. 2d 198, 212 (E.D.N.Y. 2006).  That Plaintiff's alternative claim should be dismissed for failure to state a claim has no bearing on the *existence* of an alternate avenue for relief.  *See Dava v. City of New York*, 2016

WL 4532203, at *11 (S.D.N.Y. Aug. 29, 2016) (denying plaintiff's § 1983 claims and claims under the New York Constitution because § 1983 provides an alternate remedy).

And, in any event, Plaintiff was not deprived of a civil right as required to state a claim under this provision of the New York State Constitution.  Section Eleven of Article 1 contains two provisions: an Equal Protection Clause and a Civil Rights Clause.  The Equal Protection Clause is inapplicable here because Plaintiff does not allege state action.  *See Lown*, 393 F. Supp. 2d at 236.  The Civil Rights Clause, which provides a cause of action against private actors in limited circumstances, only applies "to civil rights which are 'elsewhere declared' by Constitution, statute, or common law."  *Lown*, 393 F. Supp. 2d at 245 (citing *People v. Kern*, 554 N.E.2d 1235, 1239 (N.Y. 1990)).  It is "not self-executing."  *Id*.  Plaintiff cannot bring a claim under Article I, § 11 because no relevant authority has recognized freedom from discrimination in banking to be a "civil right."  *See Kern*, 554 N.E.2d at 1241 (civil rights are those "rights which appertain to a person by virtue of his citizenship in a state or community"); *see also Lown*, 393 F. Supp. 2d at 245 (plaintiffs failed to state a claim because "[f]reedom from religious discrimination in employment by a religious organization is not a civil right elsewhere declared" (internal quotation marks omitted)); *see also Dorsey v. Stuyvesant Town Corp.*, 87 N.E.2d 541, 549 (N.Y. 1949) (denying state constitution claim because the "opportunity to purchase and to lease real property without discrimination" was not elsewhere declared a civil right); *compare Campaign for Fiscal Equity, Inc. v. State*, 616 N.Y.S.2d 851, 856 (Sup. Ct.) (plaintiff entitled to bring Article I, § 11 claim because Executive Law § 291(2) provides that "the opportunity to obtain education without discrimination … is hereby recognized as and declared to be a civil right"), *aff'd as modified*, 619 N.Y.S. 2d 699 (App. Div. 1994).  Accordingly, Plaintiff cannot sustain a claim under Article I, § 11.

16

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the FAC in its entirety pursuant to Rule 12(b)(6).

Dated: February 27, 2018                              Respectfully submitted,

<div style="margin-left: 50%;">

/s/  David Sapir Lesser

David Sapir Lesser
Sharon Cohen Levin
Michelle Nicole Diamond
WILMER CUTLER PICKERING
   HALE AND DORR LLP
250 Greenwich Street
New York, NY 10007 USA
Tel.: (212) 230-8851
Fax: (212) 230-8888

</div>