UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                              :

IZZET AKYAR,                                    :

                                         Plaintiff,     :
                                              :           18-CV-379 (VSB)
            - against -                   :
                                              :           **OPINION & ORDER**
                                              :

TD BANK US HOLDING COMPANY, et al., :

                                        Defendants. :

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/12/2018

Appearances:

David Marc Schwartz
Gerstman Schwartz LLP
Garden City, NY
*Counsel for Plaintiff*

Michelle Nicole Diamond
Sharon Cohen Levin
David Sapir Lesser
Wilmer Cutler Pickering Hale & Dorr LLP
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

        Plaintiff Izzet Akyar brings this action against Defendants TD Bank, N.A. ("TD Bank") and Amanda Skeldon (nee Major) (collectively, "Defendants") asserting claims based on discrimination, in violation of 42 U.S.C. § 1981 ("§ 1981"), Title II of the Civil Rights Act of 1964 ("Title II"), 42 U.S.C. §§ 2000a, et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290, et seq., and Article 1, § 11 of the New York State Constitution ("Article 1"). Before me is Defendants' motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief

can be granted. Because Plaintiff (1) fails to plead any facts giving rise to an inference that Defendants discriminated against him with the requisite intent, and (2) does not plausibly allege that TD Bank is a public accommodation within the meaning of Title II, Defendants' motion to dismiss is GRANTED.

I. **Background**[1]

Plaintiff is a "Turkish male" who formerly held bank accounts with TD Bank. (FAC ¶¶ 2, 8.)[2] Plaintiff is also a known member of the Gulen Movement—"a cultural movement of millions of Turks who have been inspired by the teachings of Fethullah Gulen." (FAC ¶ 12.) Although the Gulen Movement considers itself to be a peaceful organization that seeks to spread the ideals of altruism, modesty, hard work, and education, tension exists between the Gulenists and the Turkish government, which has labeled the Gulenists a terrorist group. (FAC ¶ 14.) The Turkish government blamed the Gulenists for a failed military coup that took place on July 15, 2016. (FAC ¶¶ 14, 20.)

Between December 2013 and July 2016, TD Bank published at least four articles related to the political fallout between the Gulen Movement and the Turkish government.[3] The articles discussed, among other things, "Turkey's political feud," "the fracture between Gulenists and supporters of Erdogan [the president of Turkey]," and the attempted coup. (FAC ¶¶ 17–21.)

---

[1] I assume Plaintiff's allegations contained in the First Amended Complaint, (Doc. 17), to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "FAC" refers to the First Amended Complaint, filed on February 13, 2018. (Doc. 17.)

[3] Although Plaintiff alleges that these articles were authored by "Defendants," Defendants claim they were actually "market commentary concerning 'Rates, FX and Commodities Research,' produced by analysts at a different entity: TD Securities London," (Defs.' Mem. 3). Defendants do not point to anything in the First Amended Complaint that establishes that TD Securities London and TD Bank are separate entities. Therefore, based on the allegations in the First Amended Complaint, I assume for purposes of this motion that the referenced articles were authored and/or produced by Defendant TD Bank and/or its representatives. "Defs.' Mem." refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, filed on February 27, 2018. (Doc. 19.)

In 2013, the United States Department of Justice (the "DOJ") commenced an initiative titled "Operation Choke Point" that was intended to prevent designated "high risk" entities from accessing the banking industry in order to cripple their businesses. (FAC ¶ 26.) To incentivize banks to comply with the operation, the DOJ threatened institutions with subpoenas and civil monetary penalties. (FAC ¶ 28.) Operation Choke Point effectively ended in 2015, but it was not formally terminated until August of 2017. (FAC ¶ 29.)

On March 29, 2017, Defendants sent a letter to Plaintiff stating TD Bank's intent to close Plaintiff's accounts, effective April 28, 2017. (FAC ¶¶ 2, 9, 22.) The letter did not cite any specific reason for Defendants' decision to terminate Plaintiff's accounts. (FAC ¶ 9.) Plaintiff claims that "Defendants terminated Plaintiff's accounts because he is a Turk with ethnic affiliations related to the Gulenist movement." (FAC ¶¶ 11, 25.)

## II.  Procedural History

On November 15, 2017, Plaintiff filed a complaint in the Supreme Court of the State of New York, County of New York. (Doc. 1-1.) On January 16, 2018, Defendants filed a notice of removal, removing the matter to this Court. (Doc. 1.) On January 23, 2018, Defendants filed a motion to dismiss the complaint. (Doc. 11.) The following day, I issued an Order directing Plaintiff to file either an amended complaint or a response to the motion to dismiss. (Doc. 14.)

On February 13, 2018, Plaintiff filed the operative First Amended Complaint. (Doc. 17.) On February 27, 2018, Defendants filed their motion to dismiss the First Amended Complaint, along with a memorandum of law in support and the Declaration of Michelle Nicole Diamond, with exhibits. (Docs. 18–20.) On March 29, 2018, Plaintiff filed his opposition to the motion to dismiss, (Doc. 23), and on April 12, 2018, Defendants filed their reply, (Doc. 24).

### III. Legal Standard – Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* Finally, a complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

**IV.     Discussion**

Defendants move to dismiss all of Plaintiff's claims on the grounds that Plaintiff's allegations are insufficient to state a claim upon which any relief may be granted. I address Defendants' arguments with regard to each of Plaintiff's claims in turn below.

    **A.**     *Section 1981 Claim*

        **1. Applicable Law**

Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings." 42 U.S.C. § 1981(a). To establish a claim under § 1981, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial [or ethnic] minority, (2) an intent to discriminate on the basis of race [or ethnicity] by the defendant, and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec.*, 7 F.3d 1085, 1087 (2d Cir. 1993).

In order to survive a motion to dismiss, "the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint." *Jenkins v. Arcade Bldg. Maint.*, 44 F. Supp. 2d 524, 528 (S.D.N.Y. 1999) (internal citation omitted). A plaintiff may prove discriminatory intent "by direct evidence or by circumstantial evidence, including evidence of the difference in treatment." *Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 307 (S.D.N.Y. 2009) (internal quotation marks omitted). When discriminatory intent is at issue, "courts are cautious of summary adjudication." *Hicks v. IBM*, 44 F. Supp. 2d 593, 598

(S.D.N.Y. 1999). However, "[c]onclusory or naked allegations" are insufficient; "[f]act-specific allegations of a causal link between the defendant's actions and the plaintiff's race are required." *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 338 (S.D.N.Y. 1999), *aff'd sub nom. Dove v. O'Hare*, 210 F.3d 354 (2d Cir. 2000); *see also Dickerson v. State Farm Fire & Cas. Co.*, No. 95 Civ. 10733 (MBM), 1996 WL 445076, at *3 (S.D.N.Y. Aug. 1, 1996) ("It is not enough merely to assert that the defendant took adverse action against the plaintiff, and that the action was the product of racial animus. The complaint must allege specific facts supporting both the existence of the racial animus and the inference of a link between the adverse treatment and the racial animus."). Finally, "a complaint that identifies other possible motives, combined with a lack of specific factual support of racial animus, contradicts a claim of racial discrimination." *Hicks*, 44 F. Supp. 2d at 598 (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994)).

### 2. Application

Defendants contend that Plaintiff has failed to state a claim of discrimination under § 1981 because Plaintiff does not plausibly allege a cognizable racial or ethnic identity and fails to plead any facts giving rise to an inference that Defendants discriminated against him with the requisite intent. (Defs.' Mem. 6–7.) Even assuming for purposes of this motion that Plaintiff has sufficiently pleaded facts to satisfy the first and third elements of the claim, I find that Plaintiff's pleading lacks adequate allegations of racial animus and intentional discrimination necessary to state a cognizable claim under § 1981.

In support of his claim that his bank accounts were terminated for discriminatory reasons, Plaintiff points to the fact that Defendants closed his accounts "months" after the last publication of the TD Bank articles discussing the Gulen Movement and "within mere days of the surfacing of online articles tying Plaintiff to the Gulenists and an FBI investigation into their monetary

transactions." (FAC ¶¶ 22, 24.) Even construing the facts in Plaintiff's favor, they do not sufficiently raise an inference of intentional discrimination motivated by race or ethnicity. As Plaintiff states, the articles discussed the political state in Turkey, including "the political instability and uncertainty that is arising from an escalation of Turkish institutional conflict" and "the fracture between Gulenists and supporters of Erdogan." (FAC ¶¶ 17–21.) The articles do not appear to disparage the Gulenists, their movement, or Turkish nationals, but rather seem to objectively describe the political state in Turkey, including the relationship between the country's government and the Gulenists. (*See generally* Diamond Decl., Exs. 3–5.)[4] Other than Plaintiff's conclusory assertion that "Defendants terminated Plaintiff's accounts because he is a Turk with ethnic affiliations related to the Gulenist movement," (FAC ¶ 25),[5] the First Amended Complaint is devoid of facts to support Plaintiff's assertion that the actions taken by Defendants were motivated by discriminatory animus, *see Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) ("Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race. This is not sufficient."); *Brown v. City of Oneonta*, 221 F.3d 329, 338–39 (2d Cir. 2000) (affirming dismissal of § 1981 claims because plaintiff failed to sufficiently allege intentional discrimination). These conclusory allegations are insufficient to plausibly allege that Defendants were motivated by discriminatory animus.

Plaintiff also attempts to raise an inference of discrimination by pleading disparate treatment. When considering whether a plaintiff has raised an inference of discrimination by showing that he was subjected to disparate treatment, a plaintiff must show that he was

---

[4] "Diamond Decl." refers to the Declaration of Michelle Nicole Diamond in Support of Defendants' Motion to Dismiss, filed on February 27, 2018. (Doc. 20.) Exhibits three through five of the Diamond Declaration attach the TD Bank articles referenced by Plaintiff in the First Amended Complaint and are incorporated by reference.

[5] I note that nowhere in the First Amended Complaint does Plaintiff describe what it means to be a "Turk with ethnic affiliations related to the Gulenist movement," (FAC ¶ 25), or attempt to link this vague description to TD Bank's actions.

"similarly situated in all material respects" to the individuals to whom he seeks to compare himself. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). The comparators' circumstances need not be identical, but there must be a reasonably close resemblance of facts and circumstances. *See id.* at 40; *see also McGuinness v. Lincoln Hall*, 263 F.3d 49, 53–54 (2d Cir. 2001).

Here Plaintiff merely maintains that he was "treated differently from other similarly situated non-Turkish, non-Gulenist TD Bank clients who continue to utilize their bank accounts," (FAC ¶ 45), without alleging how he was "similarly situated in all material respects" to the group of comparators. For instance, the First Amended Complaint does not contain any allegations regarding how the comparators utilized their bank accounts, how long they held accounts with TD Bank, the political group with which they were associated, if any, or whether their accounts were implicated in an FBI investigation or DOJ initiative. *Cf. Benaddi v. Jarvis*, No. 8:15-cv-2143-T-33TGW, 2016 WL 3633010, at *3 (M.D. Fla. July 7, 2016) (dismissing plaintiff's Title II claim because plaintiff's allegation that "other non-Arab and non-Muslim customers . . . were not treated in the hostile discriminatory manner experienced by her" was not enough to show that similarly-situated individuals were treated differently and constituted nothing more than threadbare recitals of the elements of a cause of action under *Iqbal*). Plaintiff's allegations, generously construed, are little more than conclusory statements of insufficient probative value. Such broad, general allegations do not plausibly state a claim of discrimination based on disparate treatment. *See, e.g.*, *Colon v. City of N.Y.*, No. 16 Civ. 6425 (KPF), 2018 WL 740992, at *6 (S.D.N.Y. Feb. 6, 2018) (dismissing § 1981 claim where plaintiff offered "no information about who these employees are, whether they were subject to the same schedules or regulations that she was, or any other indication that they are similarly situated to her"); *Wegmann v. Young*

*Adult Inst., Inc.*, No. 15 Civ. 3815 (KPF), 2016 WL 827780, at *10 (S.D.N.Y. Mar. 2, 2016) (dismissing disparate treatment claims because plaintiff failed to show that she was similarly situated to comparators where she did not plead facts about the position, responsibilities, tenure, or experience of the comparators and therefore failed to "set forth enough facts to 'nudge her claims across the line from conceivable to plausible'").

Furthermore, the First Amended Complaint provides a clear motive for the termination of Plaintiff's accounts that does not turn on racial animus. Plaintiff asserts that Defendants' decision to close Plaintiff's accounts was "made pursuant to [the DOJ's Operation Choke Point] in order to avoid any future issues with the [DOJ]" which threatened severe sanctions for noncompliance. (FAC ¶¶ 26, 31.)[6] A complaint that identifies "other possible motives"—here avoidance of future issues with the Government—for a defendant's action and that does not contain "specific facts" suggesting discriminatory animus "contradicts a claim of racial [or ethnic] discrimination." *Korova*, 2013 WL 417406, at * 9; *see also Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994) (affirming dismissal of § 1981 claim where plaintiff failed to provide factual support for "naked allegation" of discrimination but did allege several non-discriminatory reasons for the resulting action); *Andrews v. Freemantlemedia N.A., Inc.*, No. 13 Civ. 5174(NRB), 2014 WL 6686590, at *10–11 (S.D.N.Y. Nov. 20, 2014) (dismissing § 1981 claim where complaint provided clear motive for adverse action that was not based on racial animus), *aff'd*, 613 F. App'x 67 (2d Cir. 2015); *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 475 (S.D.N.Y. 2013) (same).[7]

---

[6] It bears noting that the First Amended Complaint does not allege that Operation Choke Point was motivated by discriminatory animus towards Gulenists. (*See generally* FAC ¶¶ 26–27.) At most the allegations in the First Amended Complaint suggest that Operation Choke Point was misguided and unfair to certain groups but not due to any discriminatory animus. (*See id*.)

[7] Defendants contend that Plaintiff alleges another non-discriminatory reason for his account closure, namely that the Gulenists have been labeled a terrorist group by the Turkish government and are under investigation by the

Accordingly, I find that Plaintiff has failed to state a claim under § 1981 and Defendants' motion to dismiss the claim is granted.

B. *Title II Claim*

Under Title II, "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). A plaintiff bringing a claim under Title II must allege facts showing (1) that he was deprived of equal use and enjoyment of a place of public accommodation and (2) facts which demonstrate discriminatory intent. *Coward*, 665 F. Supp. 2d at 307. To survive dismissal, a plaintiff must allege that he is a member of a protected class and must plead sufficient factual content to allow the court to draw a reasonable inference that the defendant was motivated by discriminatory intent. *Renxiong Huang v. Minghui.org*, No. 17 Civ. 5582 (ER), 2018 WL 3579103, at *4 (S.D.N.Y. July 25, 2018). The standard for whether discriminatory intent was adequately pled under Title II is the same as under § 1981. *Stone v. N.Y. Pub. Library*, No. 05 Civ. 10896(DLC), 2008 WL 1826485, at *3 (S.D.N.Y. Apr. 22, 2008), *aff'd*, 348 F. App'x 665 (2d Cir. 2009).

Plaintiff does not plausibly allege either element of a Title II discrimination claim. With respect to the first element, a place of "public accommodation" is an establishment either affecting interstate commerce or supported by state action that falls into one of the following categories: "(1) a lodging for transient guests located within a building with more than five rooms for rent; (2) a facility principally engaged in selling food for consumption on the premises,

---

Federal Bureau of Investigation for suspicious monetary transactions. (Defs.' Mem. 10 (citing FAC ¶¶ 14, 24.)) Because I find that Defendants' apparent efforts to comply with what they perceived to be the purposes of the DOJ's Operation Chokepoint constitutes a clear non-discriminatory motive for the termination of Plaintiff's accounts, I do not address this additional alleged non-discriminatory reason for the account closures.

10

including such facilities located within retail establishments and gasoline stations; (3) any place of exhibition or entertainment; (4) any establishment located within an establishment falling into one of the first three categories, and which holds itself out as serving patrons of that establishment; or (5) any establishment that contains a covered establishment, and which holds itself out as serving patrons of that covered establishment." *Bishop v. Henry Modell & Co.*, No. 08 Civ. 7541(NRB), 2009 WL 3762119, at *12 (S.D.N.Y. Nov. 10, 2009) (citing 42 U.S.C. § 2000a(b)). Because Congress specified the establishments that constitute places of public accommodation under § 2000a, courts in this circuit apply the statute to only those covered establishments. *Renxiong Huang*, 2018 WL 3579103, at *3. In other words, courts have held that the language of the statute does not suggest that the listed establishments in the statute were meant to serve as mere examples of public accommodations. *See id.* Plaintiff asserts that TD Bank qualifies as a public accommodation within the meaning of Title II. (FAC ¶ 50.) However, the text of § 2000a does not explicitly include banks, *see* 42 U.S.C. § 2000a(b), and courts have expressly concluded that banks are not places of public accommodation within the meaning of the provision. *See, e.g.*, *Hatcher v. Servis First Bank*, No. 2:16-cv-01362-RDP, 2016 WL 7336403, at *3 (N.D. Ala. Dec. 19, 2016) (opining that banks do not constitute places of public accommodation for purposes of § 2000a); *Lowe v. ViewPoint Bank*, 972 F. Supp. 2d 947, 959 (N.D. Tex. 2013) (concluding that because a bank is not a place of public accommodation, plaintiff could not recover under § 2000a); *Ajuluchuku v. Wachovia Corp.*, No. 3:05CV532-C, 2006 WL 406602, at *3 (W.D.N.C. Feb. 17, 2006) (same), *report and recommendation adopted*, 2006 WL 659470 (W.D.N.C. Mar. 12, 2006); *cf. Bishop*, 2009 WL 3762119, at *12 (dismissing Title II case, finding that retail establishments are not places of public accommodation); *Verhagen v. Olarte*, No. 89 CIV. 0300(CSH), 1989 WL 146265, at *4 (S.D.N.Y. Nov. 21, 1989)

11

(holding that hospitals are not places of public accommodation because "the particular establishments covered by the federal statute do not include hospitals").

Moreover, Plaintiff's Title II claim, like his § 1981 claim, *see supra* Part IV.A.2, fails for lack of allegations raising a plausible inference of discrimination based on a protected status. *See Lizardo*, 270 F.3d at 104 ("For the same reasons that the plaintiffs can not prevail on their § 1981 claims, they can not do so under § 2000a."); *Coward*, 665 F. Supp. 2d at 307 (dismissing Title II based on same reasons used to dismiss § 1981 claims).[8]

Accordingly, Defendants' motion to dismiss Plaintiff's Title II claim is granted.

### C. *State Law Claims*

A district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Indeed, "when federal claims are dismissed early in the litigation . . . dismissal of state law claims is appropriate." *Karmel v. Liz Claiborne, Inc.*, No. 99 Civ.3608IWK), 2002 WL 1561126, at *3 (S.D.N.Y. July 15, 2002) (internal quotation marks omitted). Having dismissed all of Plaintiff's claims over which I had original jurisdiction early in this litigation, I decline to exercise jurisdiction over Plaintiff's pendent state law claims to the extent that his factual allegations give rise to them. Accordingly, Plaintiff's remaining NYSHRL and Article 1 claims are dismissed with leave to

---

[8] Because I find that Plaintiff's Title II claim must be dismissed for the foregoing reasons, I do not address Defendants' other proffered reasons for dismissal of that claim.

refiling those claims in state court.

### D. *Dismissal with Prejudice*

Finally, my dismissal of the federal claims in the First Amended Complaint is with prejudice. Neither party addresses whether the causes of action should be dismissed with or without prejudice. As a general matter, under Federal Rule of Civil Procedure 15(a)(2), "[l]eave to amend is to be freely given when justice requires." *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 140 (2d Cir. 2013). "[I]t is within the sound discretion of the court whether to grant leave to amend." *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 280, 281 (S.D.N.Y. 2010) (quoting *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994)). Courts will deny leave to amend in cases of, among other things, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and/or] futility of amendment." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (internal citation omitted).

As discussed above, Plaintiff, who is counseled, amended his complaint once already after having the benefit of reviewing Defendants' motion to dismiss the initial complaint. *See supra* Part II. Defendants' motion to dismiss Plaintiff's initial complaint was substantially similar to Defendants' motion to dismiss the First Amended Complaint. (*See generally* Doc. 12.) I also advised Plaintiff that if he failed to amend he would likely not have another opportunity to do so. (Doc. 14.) "Plaintiff's failure to fix the deficiencies contained in his initial complaint, after being provided ample notice of them, is sufficient ground to deny leave to amend." *Overby v. Fabian*, No. 17-CV-3377 (CS), 2018 WL 3364392, at *14 (S.D.N.Y. July 10, 2018). Furthermore, there are no allegations Plaintiff could add to alter my conclusion with respect to

Plaintiff's Title II claim. Because banks do not constitute public accommodations under the statute, any attempt to amend that cause of action would be in vain. Accordingly, I find that Plaintiff has repeatedly failed to cure his pleading deficiencies and that amendment would be futile. Therefore, dismissal with prejudice is appropriate.

## V.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss, (Doc. 18), is GRANTED and Plaintiff's First Amended Complaint is dismissed with prejudice. To the extent that Plaintiff's allegations can be construed to give rise to state law claims, I decline to exercise jurisdiction over such claims and they are dismissed without prejudice to filing those claims in state court.

The Clerk of Court is respectfully directed to enter judgment for Defendants and close the case.

SO ORDERED.

Dated: September 12, 2018
       New York, New York

_Vernon Broderick_
Vernon S. Broderick
United States District Judge